No. 29,973.

CHARLOTTE CONWAY, *Appellant*, v. A. D. CONWAY, *Appellee.*

(298 Pac. 744.)

Opinion filed May 9, 1931.

*A. C. Malloy, Roy C. Davis* and *Warren H. White,* all of Hutchinson, for the appellant.

*Carr W. Taylor, Harry H. Dunn* and *F. Dumont Smith,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for specific performance of a contract relating to alimony, for reformation of the contract sought to be enforced, or for some other kind of relief. A demurrer to the petition was sustained, and plaintiff appeals.

In February, 1928, the plaintiff, Charlotte Conway, and her husband, the defendant, A. D. Conway, entered into a contract, the material portions of which follow:

"This contract, between A. D. Conway, first party, and Charlotte Conway, second party, witnesseth:

"Whereas, the parties hereto are husband and wife, but on account of domestic difficulties, have become separated; and

"Whereas, it is the desire of the parties by the terms and provisions hereof to enter into an agreement covering property matters during such separation, and until such time as a divorce is or may be obtained by either of the parties hereto against the other,

"Now, therefore, it is hereby mutually agreed: That first party shall pay to second party alimony in the amount of $200 per month in cash. . . . ."

The instrument contained other provisions relating to property interests which are not now material. It will be observed this contract was to last for a time only—until a divorce should be obtained.

In May, 1928, the contract was changed to read as follows:

"This contract, between A. D. Conway, first party, and Charlotte Conway, his wife, second party, witnesseth:

"That whereas, the parties hereto did, under date of February 16, 1928, enter into a mutual contract of separation, covering alimony and property matters during such separation, and until such time as a divorce is or may be obtained by either of the parties hereto against the other, which contract is hereby specifically referred to and made a part hereof; and

"Whereas, the parties hereto, by mutual consent, desire to change said contract, as and to the extent herein set forth,

"Now, therefore, it is agreed that in event of any divorce hereafter obtained by either of the parties hereto against the other, the court shall, and it is hereby requested to incorporate the terms of said contract with reference to alimony and property matters, in any such decree that may be rendered, and to make the decree as to alimony and property in accordance therewith. In addition thereto, first party agrees to pay the court costs in such action and $100 attorney's fee for second party's attorney.

"It is further agreed, and this contract is made upon the condition, that the court shall retain jurisdiction of the cause, for the purpose of controlling and changing in the court's discretion, the amount or amounts of alimony to be paid in the future, and that said matter may be reopened and reconsidered at any time, upon application of either party. In such event [provision for notice].

"It is further agreed that said payments shall be considered as payments of alimony to second party, and not as support money for the children of second party.

"It is further agreed that in event of either the death or remarriage of second party, any and all payments, commencing with the date of said occurrence, shall thereupon cease and terminate."

It will be observed the original contract was continued in force except as modified, and payment of alimony in the sum of $200 per month by agreement continued to be temporary—until a divorce was procured and alimony was provided for by decree.

The contract was again modified by substituting one tract of real estate for another, a matter now of no concern. The payments to be made pursuant to the contract were made, and in September,

1928, the contemplated decree for alimony was entered. Neither party appealed, the decree became absolute, and the decree was complied with until May, 1929.

In May, 1929, Conway filed a motion to modify the decree because of changed circumstances which he asserted warranted a reduction of the sum of money to be paid monthly. Mrs. Conway then struck the first blow at the decree. She opposed modification on the ground the court had no power to modify. The court found the award should be reduced to $125 per month, but sustained Mrs. Conway's contention that the court lacked power to make the modification. Conway then moved to modify the decree by striking from it the provision for monthly payments while plaintiff lived and remained unmarried. The motion was denied, Conway appealed, and this court held the provision was void and should be stricken from the decree. (*Conway v. Conway,* 130 Kan. 848, 288 Pac. 566.)

Ignoring the decree, Mrs. Conway now demands specific performance of the contract. The contract was for $200 per month until divorce, and then for a decree embodying specified terms. The contract was performed exactly as stipulated, and there is nothing further for Conway to do, so far as performance of the contract is concerned.

Realizing that specific performance does not lie to compel performance of performed acts, Mrs. Conway asks that the contract be reformed, and then enforced.. The remedy of reformation of a writing exists in order to make the writing express what the parties intended should be put in the writing. In this instance there was a writing. That writing was modified. The modified writing was modified. A court decree was framed, at the request of the parties, according to the phraseology of the writing in its final form. There was no application to the court for correction or change of the decree, and it became absolute. The decree was complied with. When Conway undertook to exercise a privilege given by the decree, Mrs. Conway made no objection that either the writing or the decree was not in accordance with the intention of the parties. The parties intended Conway should pay $200 per month until a divorce was granted, and intended an alimony decree should be rendered in the divorce action embodying stated terms. The writing gave clear expression to that intention, and there is no ground for reformation.

What happened was this: The parties contracted on the assumption the district court possessed power to do two things—first, to

award alimony in a sum per month to be paid while Mrs. Conway lived and remained single; and second, to make future modification of the award as changed circumstances might require. The assumed power did not exist, and the writing and the decree were unenforceable. It makes no difference that the parties both believed the power existed. The court was without jurisdiction with respect to both subjects, and the parties could not confer jurisdiction by consent.

Mrs. Conway agreed to a decree awarding her $200 per month while she lived and remained single, on condition she could subsequently have the monthly payments enlarged according to her need and Conway's ability to pay. Conway agreed to a decree requiring him to pay $200 per month while Mrs. Conway lived and remained single, on condition he could subsequently have the monthly payments decreased according to her need and his ability to pay. That was the basis on which the parties undertook to settle alimony. How they would have settled alimony if they had known the assumed power did not exist, nobody knows, and the district court has no authority to reform the writing to make it express what the court may think might have been agreed to, but which never was agreed to.

The prayer of the petition contains the following:

"That if it is decreed that plaintiff is not entitled to a performance thereof on the basis of monthly allowances with the total sum not specified, that the court ascertain and fix such certain, definite sum, based upon the real contract and intention of the parties and the life expectancy of the plaintiff; that said decree in said original divorce action be changed so as to specify a certain, definite sum; and that plaintiff have such other and further relief in the premises to which she may be justly entitled."

It will be observed the prayer speaks of the real contract and intention of the parties. The real intention of the parties was expressed in an unambiguous writing which the court was requested to embody in a decree, and which the court did embody in a decree. The fact the result was not what the parties supposed it would be does not affect the character of the intention or the character of the writing. To illustrate: A vendor promises to convey land and the vendee promises to pay for it, by spoken words which leave no doubt about intention or expression of intention. It is not material that both parties believed the oral promise to convey was enforceable. The law will not enforce it, whatever the benefit or detriment resulting from nonenforceability may be.

In this instance the manifested assent of each party was to a settlement of alimony which the law could not recognize or enforce:

"A contract is a promise or a set of promises for the unexcused breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." (Contracts, American Law Institute Restatement, ch. 1, § 1.)

Therefore there was no contract for the payment of alimony after divorce. The portion of the decree which embodied what the parties did agree to was nugatory. The result is very unsatisfactory to Mrs. Conway, and what she wants is that a court of equity shall now make a decree in the nature of an alimony decree, as a revision of or as a substitute for an alimony decree which has long since become final. The district court has no more power to take fresh jurisdiction over the subject of alimony than it had continuing power to revise the original alimony decree. (*Conway v. Conway*, 130 Kan. 848, 288 Pac. 566.)

The judgment of the district court is affirmed.